|1MAX N. TOBIAS, JR., Judge.
The plaintiffs, Sandra Roth, wife oi/and William B. Haensel, Jr. (hereinafter “the plaintiffs” or “the Haensels”), appeal from a judgment rendered in favor of the defendant, State of Louisiana, through University Hospital of New Orleans (a/k/a Charity Hospital of New Orleans) (hereinafter “Charity”), which dismissed their suit with prejudice. For the reasons below, we affirm the trial court.
On 17 February 1995, at approximately 1:50 a.m., the plaintiffs’ daughter Michelle, a guest passenger in a vehicle operated by defendant Christopher C. Nabors (hereinafter “Nabors”) and insured by Arnica Insurance Company (hereinafter “Arnica”),[1] died by drowning when the vehicle plunged into Bayou St. John in Orleans Parish. Nabors was able to extricate himself from the vehicle, but did not attempt to rescue Michelle Haensel, who was apparently trapped by her seat belt.
Upon arrival at the scene, officers of the New Orleans Police Department (“NOPD”) and emergency personnel detected the odor of alcohol on Nabors’ 12breath. In addition, they found him to be combative, abusive, and with slurred speech. Nabors was transported to Charity for medical attention.
When Nabors first arrived at Charity’s emergency room, he was treated by Jean Friday, M.D., who testified that Nabors was “very intoxicated,” that she could smell alcohol on his breath and his person, and that he was abusive and combative. Dr. Friday testified that she did not know Nabors, the details of the accident, the identity of the victim, or the victim’s parents at the time of Nabors’ arrival in the emergency room.
*789 Dr. Friday routinely inserted an IV into Nabors’ arm and drew blood for testing before hooking up the IV fluids.[2] She did not recall whether she drew blood for a blood alcohol sample, although she thought she had ordered one. Nabors’ medical records are silent with respect to any samples drawn for blood alcohol, although the record is clear as to the other blood tests ordered by Dr. Friday. Upon completion of her initial exam and insertion of the IV, Dr. Friday requested Lee Lenahan, M.D., to assume care of Nabors, due to his combative nature.
At approximately 3:55 a.m., Dr. Lenahan took a sample of Nabors’ blood at the request of the NOPD.[3] The blood sample was then transported for testing to NOPD’s lab, resulting in a report of .04% blood alcohol level (“BOL”) for Nabors.
IgNabors was subsequently charged with a violation of La. R.S. 14:32.1, Vehicular Homicide.[4] At his arraignment, Nabors plead “not guilty;” the plaintiffs, their family, and a number of friends were in the courtroom when the charges against him was read and knew that alcohol was an element of vehicular homicide.[5] Mr. Haensel testified at the trial of this matter that he was aware that vehicular homicide was a charge against persons under the influence of alcohol at the time of the arraignment.
On 1 May 1995, the plaintiffs’ attorney sent a demand letter to Arnica that stated that the plaintiffs were aware that Nabors had been drinking on the night of the accident and that they may be entitled to punitive damages under La. C.C. art. 2315.4.[6] Unquestionably, the plaintiffs and their attorney knew prior to settlement that alcohol played a role, perhaps major, in this accident.
LVarious motion hearings were held in criminal court, at which time the evidence and testimony confirmed that Nabors had been drinking immediately before the accident. The plaintiffs and their family were present in court for all motion hearings. On 12 September 1995, the plaintiffs settled their claims against Nabors and Arni-ca for $305,000.00; the Haensels signed a “Mutual Receipt and Release,” whereby they gave up all claims against Nabors and *790 Arnica, specifically including claims for punitive damages under La. C.C. art. 2315.4. The Haensels testified that they knew their punitive damage claims would be waived before they signed the releases.
Nabors’ trial began on 27 November 1995, and he was convicted of vehicular homicide the next day. The plaintiffs and their family sat through the entire trial. At his sentencing on 16 February 1996, Nabors pleaded for leniency, stating that he was highly intoxicated at the time of the accident.
The instant suit was filed on 19 May 1996, in which the plaintiffs alleged that Nabors’ blood alcohol sample obtained by Charity for the NOPD was tampered with or contaminated by unknown Charity personnel that resulted in a BOL of only .04%. The plaintiffs further allege that as a direct result of the conspiracy by unknown Charity personnel to tamper with and/or contaminate Nabors’ blood alcohol sample, they were unaware that Nabors was intoxicated at the time of the accident and they were deprived of their right to pursue punitive ^damages and further general damages for their daughter’s pain and suffering, as well as damages for loss of love, affection, and society. The prayer for relief sought “all damages and punitive damages to which they may be found entitled.”
A bench trial took place on 25 February and 2 March 2003; judgment was rendered in favor of the defendants, dismissing the plaintiffs’ claims with prejudice. The trial court issued extensive written reasons on 20 March 2003, in which it stated in pertinent part:
It must be said, then, that these plaintiffs, in particular, have left no stone unturned or ignored in each and every step of the events following this accident, from date of the accident to the present date. There can be no doubt that they received more than sufficient notice, on a consistently repetitive basis prior to their settlement with Nabors’ insurer and the accompanying waiver of claims for punitive damages that alcohol was intricately involved in this accident. Their allegations that they were deprived of information concerning the involvement of alcohol, therefore, are totally without merit. They made an informed settlement and waiver of claims for punitive damages, and cannot claim that any alleged conspiracy in the emergency room of Charity deprived them of knowledge necessary for them to pursue Nabors’s insurer for punitive damages.
Plaintiffs’ allegations of conspiracy are without merit; it is hard to imagine that any emergency room personnel formed an intent to deprive these plaintiffs of punitive damages in connection with this accident, then discussed it, agreed to a course of action and performed an act specifically intended to result in the deprivation of punitive damages to plaintiffs. Further, there can be no doubt that plaintiffs were fully informed of the involvement of alcohol in this accident from virtually the next day following the accident and continuously from that date forward until the date, seven months later, when they settled with Nabors’ insurer and released claims to punitive damages. Even if there had been a conspiracy, arguably, then, it had no effect upon plaintiffs’ knowledge of the involvement of alcohol in this matter. | fiAccordingly, plaintiffs’ claims are dismissed with prejudice.
The plaintiffs have filed the instant appeal and assign three errors for review. First, they contend that the trial court erred by imposing an erroneous burden of proof on the plaintiffs. Second, they argue that the trial court improperly restricted the pleadings to punitive damages alone *791 and failed to consider the claim for general damages. Finally, the plaintiffs contend that the trial court abused its discretion by finding that the blood sample drawn in the emergency room by Dr. Lenahan was done so under the direct supervision of a NOPD officer.
We apply the clearly wrong/manifestly erroneous standard of review to the factual findings of the trial court.
In the first and second assignments of error, the plaintiffs argue that the trial court only considered their cause of action for conspiracy and ignored the cause of action against Charity for general damages, as expressed in the petition and as demonstrated at trial. Their claim for general damages, the plaintiffs contend, is not based on “alcohol involvement,” but on Charity’s own breach of duty to them, by gross negligence and/or intentional spoliation of Nabors’ blood alcohol sample.
In response, Charity argues that the only cause of action set forth in the plaintiffs’ petition was conspiracy and that the trial court correctly applied the law and burden of proof.
Article 891 of the Louisiana Code of Civfi Procedure provides in pertinent part:
The petition shall comply with Articles 853, 854, and 863, and, whenever applicable, with Articles 855 through 861. .It shall set forth the name, surname, and domicile of the parties; shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence [7that is the subject matter of the litigation; shall designate an address, not a post office box, for receipt of service of all items involving the litigation; and shall conclude with a prayer for judgment for the relief sought. Relief may be prayed for in the alternative.
We have carefully reviewed the plaintiffs’ petition and do not find a claim for negligence that would support an award of general damages. In particular, the plaintiffs’ petition alleges:
7.
Plaintiffs aver that such a gross inconsistency could only have occurred by tampering with plaintiffs [sic] blood/sample, or by orchestrating events prior to, during, or after withdrawal of the blood sample, to deliberately dilute same so that Nabors would benefit by a low alcohol reading.
8.
Plaintiffs further aver that the only place that such tampering could have occurred was in the emergency room of University Hospital, after Nabors was brought there by the EMS personnel; Nabors was, at the time, an intern at Charity Hospital, and was known to the other interns, medical doctors and nurses who were on duty when Nabors was brought in.
' 9.
Plaintiffs now aver that certain parties, whose identities are presently unknown, conspired to dilute Nabors’ blood/alcohol content, and by doing so, destroyed crucial evidence which would have made them aware that Nabors’ actions were under the heavy influence of intoxicating beverages, and that such information would have allowed them to pursue a claim for punitive damages against Nabors and his automobile liability insurer, and further general damages related to their daughter’s own pain and suffering, and their loss of her love, affection and society.
| sHowever, even assuming that the petition was amended to conform the evidence pre *792 sented at trial[7], the record does not support a finding of negligence on the part of Charity.
We have carefully reviewed the trial transcript in which the testimony uniformly revealed that IV fluids would likely contaminate a blood alcohol sample taken above an IV site. While Dr. Lenahan could not say for certain that he drew the blood alcohol sample above the IV site without first stopping the infusion of IV fluids, it appears more likely than not that such occurred. Despite this evidence, however, the plaintiffs did not prove negligence on the part of Charity and/or its employees.
Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under La. C. C. art. 2315. In order for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant’s substandard [ sconduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of protection element); and (5) actual damages (the damage element). Pinsonneault v. Merchants & Farmers Bank & Trust Company, 2001-2217, p. 6 (La.4/3/02), 816 So.2d 270, 275-76.
The threshold question in any duty-risk analysis is whether the defendant owed a duty to the plaintiff. Id. at p. 7, 816 So.2d at 276. Therefore, we must determine whether Charity owned a duty to the Haensels when it drew the blood alcohol sample in question.
We know of no statutory or jurisprudential authority that would support a finding that Charity owed a duty to the plaintiffs under this set of facts. The only instance that we could find where a doctor was held liable to a third party was in Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415: when a psychotherapist breaches the duty to warn third parties of a threat of violence communicated by a psychiatric patient. However, in Hutchinson, 93-2156 at p. 1 637 So.2d at 417-18, the Supreme Court held that the Medical Malpractice Act applies exclusively to claims arising from injuries to or death of a patient where such claims are brought by the patients themselves, their representatives on the patient’s behalf, or other persons with claims arising from injuries to or death of a patient. Of course, the plaintiffs in the instant matter did not bring a medical malpractice action against Charity. However, absent an intentional tort, which was not proven at trial, there simply was no duty to the Haensels by Charity. Neither they nor their daughter were patients of *793 the medical facility. Any duty owned by Charity and its employees was to Nabors as a patient of the hospital on the night of the accident.
|inEven if we were to fashion some kind of duty, we do not find that Charity’s and/or its employees’ conduct was either a cause-in-fact or legal cause of the plaintiffs’ injuries. The plaintiffs’ injuries were caused by the reprehensible conduct of Nabors, not the botched blood alcohol sample. The plaintiffs chose to settle with Nabors and Arnica seven months after the accident. They could have waited until after Nabors’ criminal trial by merely filing suit to interrupt prescription. The record is clear that they knew at the time of the settlement that Nabors’s blood alcohol sample had been contaminated and was of no value in determining his actual BOL. In addition, it is only speculation that an accurate BOL would have induced Nabors to plead guilty before his scheduled trial date.
In any event, it is not obvious from the record that even an earlier guilty plea would have spared the plaintiffs any suffering, as they contend. As noted by the trial court in its written reasons for judgment: “[T]he plaintiffs have, despite the criminal conviction of Nabors, their settlement for $305,000.00 with Nabors’ insurer, steadily maintained their obsession with every fact of their daughter’s death.” While we cannot begin to appreciate the grief suffered by the Haensels, the law does not support their claims against Charity. Consequently, we find the assignments of error are without merit.
Finally, the plaintiffs contend that the trial court erred in finding that the blood alcohol sample was drawn “under the direct supervision of NOPD Officer Brian Frere,” when no such evidence was introduced at trial. We agree. However, based on the above, it is harmless and we find the assignment of error is without merit.
InBased on the foregoing, we affirm the judgment of the trial court, each party to bear its own costs.

AFFIRMED.

. Both Nabors and Arnica were dismissed with prejudice from the instant suit based on a settlement agreement entered into with the plaintiffs on 12 September 1995.

. Dr. Friday ordered tests to determine clotting ability, total blood count, and a "chem. 7,” to determine an electrolytes level. Dr. Friday found out later that the latter sample was not tested due to a "lab accident.”

. All medical testimony was to the effect that a blood sample taken above an IV site would be subject to contamination from the IV fluids.

. La. R.S. 14:32.1 provides in pertinent part:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator’s blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood....

. In fact, the Haensels contacted Mothers Against Drunk Driving ("MADD”) before the arraignment to insure that a-MADD representative was present at the arraignment and at all further court-proceedings.

. La. C.C. art. 2315.4. provides as follows:
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor Vehicle was a cause in fact of the resulting injuries.

. La. C.C.P. art. 1154 provides as follows
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.